## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

| | |
|---|---|
| **KIMBERLY D. MALONE** | **CASE NO. 3:21-CV-03882** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **LOUIS DEJOY** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### MEMORANDUM RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 13] filed by Defendant Louis DeJoy ("DeJoy" or "Defendant"), in his official capacity as the Postmaster General of the United States. Plaintiff Kimberly Malone ("Malone" or "Plaintiff") filed an Opposition [Doc. No. 19]. Defendant filed a Reply [Doc. No. 20].

For the reasons set forth herein, Defendant's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

Plaintiff, a Caucasian female, was employed by the United States Postal Service ("USPS") for a total of twenty-six years, which were mostly served in Mississippi.[1] The date and location subject to the present claim began around April 13, 2020, through July 27, 2020, in Monroe, Louisiana.[2] During Plaintiff's brief time spent at the Monroe location, Sharon Williams ("Williams") served as postmaster.[3] Despite being Postmaster, Williams was not responsible for hiring clerk assistants.[4]

During the time of the COVID-19 pandemic ("COVID-19"), the USPS office in Monroe had a special need for a temporary worker due to the increased absences of employees under the

---

[1] [Doc. No. 3 p. 2].
[2] [Doc. No.13-4 p.1-2].
[3] [Doc. No. 13-4 p. 4].
[4] [Id.]

"liberal leave policies."[5] The temporary position was titled "Clerk Assistant (E6-07),"[6] and Plaintiff was the only temporary Clerk Assistant hired at the Monroe location.[7] The job description stated that the "position [was] to be used for temporary support employees of the purpose of COVID-19 work during the exception period only."[8] Specifically, it was agreed that the temporary appointment was to end on May 25, 2020.[9]  Although the extension was not guaranteed, Plaintiff's appointment was verbally extended to September 25, 2020.[10]

Despite the temporary extension, Plaintiff's position was relieved on or about July 27, 2020, because the Monroe Post Office was "overbudget on allotted hours by two employees" and because employees were returning to work from the pandemic.[11] Although it is alleged that a "work needed" advertisement was placed on a public site after Plaintiff's termination, no records show that any person was hired to replace Plaintiff's temporary position.[12]

During Plaintiff's brief tenure with the USPS, she was tasked with separating packages by throwing parcels into particular carts.[13] Plaintiff alleges that one morning when throwing packages, a co-employee named Vince Howard ("Howard") told a "vulgar story." Plaintiff does not claim that the story involved race or anything of that nature.[14] Plaintiff did not report it to management.[15] On June 4, 2020, Plaintiff alleged Howard was throwing packages at her, but she did not report it to management because she felt that Williams did not have a friendly demeanor about her.[16]

---

[5] [Doc. No. 13-4 p. 4].
[6] [Doc. No. 13-4 p. 3].
[7] [Doc. 13-4 p. 4].
[8] [Id.]
[9] [Doc. No. 13-4 p. 1].
[10] [Doc. No. 13-4 p.2]; Doc. No. 19-6 p. 76].
[11] [Doc. No. 13-4 p. 5]
[12] [Id.]; [Doc. No. 19-4 p. 21]
[13] [Doc. No. 19-5 p. 5].
[14] [Doc. No. 19-5 p. 10].
[15] [Id.]
[16] [Doc. No. 19-5 p. 21, 25].

Plaintiff allegedly spoke to Royce Randall Reppond ("Reppond" ), a store steward, about Howard throwing packages in passing, yet Reppond could not recall such conversation.[17] However, Reppond admitted that Howard did have anger management issues.[18] Plaintiff stated in her deposition that, despite the alleged conversation, she never told Reppond that Howard was throwing packages at her because of her race.[19] Thereafter, Plaintiff alleged that Howard stated "all white people needed to get out of that office and Plaintiff had white privilege."[20] Again, Plaintiff did not report this statement to management. Plaintiff also alleges Ms. Jackson ("Jackson"),[21] an African American female, made derogatory comments and threatened to slash Plaintiff's tires.[22]

Aside from Reppond, Plaintiff did not discuss any conflict she was having in the workplace until around July 14, 2020, because she did not want to "cause a problem."[23] On said date, Plaintiff sent a text message to William R. Waldroup ("Waldroup"), who was also a Caucasian and supervisor to Plaintiff during her tenure at USPS.[24] Plaintiff's text message stated, "Vince has buzzed me with a package" but did not disclose any racial issue therein.[25] Eventually, Plaintiff mentioned the alleged racial issues to Waldroup because of Jackson's feelings towards her, when she sent a text to Waldroup on July 18, 2020, saying she did not want to work with Jackson.[26]

---

[17] [Doc. No. 19-9 p. 8].
[18] [Doc. No. 19-9 p. 11].
[19] [Doc. No. 19-5 p. 23].
[20] [Doc. No. 3 p. 3].
[21] It is ambiguous as to the proper spelling of the first name. In Plaintiff's Response to Defendants' Alleged Undisputed Facts [Doc. No. 19-2], the name is spelled "Shannon." In Plaintiff's Complaint [Doc. No. 3 p. 4], the name is spelled Chimere. In Plaintiff's deposition, the name was spelled Shemear [Doc. No. 19-5 p. 2].
[22] [Doc. No. 3 p. 4].
[23] [Doc. No. 19-5 p. 22].
[24] [Doc. No 19-8 p. 8].
[25] [Doc. No. 19-5 p. 23].
[26] [Doc. No. 19-8 p. 28].

On or around July 27, 2020, Plaintiff filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff brings a claim for racial discrimination under Title VII of the Civil Rights Act of 1964. Plaintiff alleges Defendant discriminated against her based on her race and that she was subject to a racially hostile work environment. After complaining of such, Plaintiff alleges that Defendant retaliated against her. Defendant filed the instant motion on July 6, 2023, arguing that Plaintiff does not have probative evidence in establishing a racial discrimination or hostile work environment claim and cannot show that she was discharged in retaliation for making a complaint of discrimination.

The issues have been briefed, and the Court is prepared to rule.

## II.    LAW AND ANALYSIS

### A.  Standard of Review

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id.*

 "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247).  "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that

the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002).  Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate.  *Id.*  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted).  While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).  To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc*., 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added).  "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co*., 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson,* 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322-23.  This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

### B.  Analysis

#### 1.  Race Discrimination Claim

Plaintiff brings a claim for racial discrimination under Title VII of the Civil Rights Act of 1964. Title VII prohibits employers from discriminating against employees on several grounds, including race. 42 U.S.C.§ 2000.  To establish a *prima facie* case of discrimination, the plaintiff must either present direct evidence of discrimination or, in the absence of direct evidence, rely on circumstantial evidence using the *McDonnell Douglas* burden-shifting analysis. As there is no direct evidence of discrimination in this case, the Court turns to the burden-shifting framework established by *McDonnell Douglas*.

Under *McDonnell Douglas*, the plaintiff carries the burden to prove that: (1) she belongs to a protected class; (2) she was qualified for the position at issue; (3) she was the subject of an adverse employment action; and (4) she was replaced by someone outside her protected class or was treated less favorably than other similarly situated employees outside his class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); s*ee also Lee v. Kan. City S. Ry. Co., 574 F.3d 253, 259* (5th Cir. 2009). If a plaintiff establishes a *prima facie* case, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse-employment action. *McDonnell Douglas*, 411 U.S. at 802.

If the employer can show a legitimate, non-discriminatory reason for the adverse-employment action, the presumption of discrimination disappears, and the burden shifts back to the plaintiff to show either that the proffered reason was a pretext for discrimination or that the plaintiff's protected status was another motivating factor for the decision. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). To overcome a legitimate, nondiscriminatory reason for termination, the plaintiff must show something beyond disagreement with the employer's

decision. *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) ("Disparate treatment of similarly situated employees is one way to demonstrate unlawful discrimination and retaliation.").

### a.  Prima Facie Case of Discrimination

Plaintiff does not provide any direct evidence that USPS terminated her employment because of her race. However, the inquiry does not end there. As mentioned above, Plaintiff can still rely on indirect evidence under the *McDonnell Douglas* framework.

Defendant asserts that Plaintiff cannot establish at least one element of a *prima facie* case—that other similarly situated employees were treated more favorably. The Court agrees with Defendant.

### i.  Other similarly situated employees

"The similarly situated analysis is intended to ensure that the challenged action was 'taken under nearly identical circumstances'." *Morris v. Town of Independence*, 827 F.3d 396, 401 (5th Cir. 2016). To establish the fourth element of the *prima facie* case, a plaintiff must show the employer gave preferential treatment to another employee outside the protected class under nearly identical circumstances. *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009).  However, as noted by the Fifth Circuit, "nearly identical" is not the same as "identical" because "total identity would be essentially insurmountable." *Willis v. Napolitano*, 986 F.Supp.2d 738, 745 (M.D. La. 2013), aff'd sub nom. *Willis v. United States*, 576 F.App'x 340 (5th Cir. 2014). There are several circumstances that exist, such as when the employees being compared hold the same position or responsibilities, share the same supervisor or had employment action decided by the same person, and have comparable history violations. *Id.*

As indicated above, Plaintiff was terminated from her temporary position due to lack of work as the initial circumstances of COVID-19 began to recede. Plaintiff offers no evidence that she was treated less favorably than other similarly situated employees outside her class. Plaintiff offers no evidence of any comparator hired after the termination of her employment.[27] Indeed, when asked if there were anyone who filled Plaintiff's position once she was relieved of employment, Plaintiff testified "I have no idea."[28] The Fifth Circuit has consistently held that an employee's "subjective belief of discrimination" alone is not sufficient to warrant judicial relief. *E.E.O.C. v. Louisiana Office of Community Services,* 47 F.3d 1428, 1448 (5th Cir. 1995).

Plaintiff failed to show, with significant probative evidence, that a genuine issue of material fact exists as to this issue because there are no comparators or similarly situated individuals offered as evidence to establish the elements of this claim.  *Hamilton,* 232 F.3d 473, 477 (5th Cir. 2000). Thus, Plaintiff has not established a *prima facie* case of racial discrimination.

### b.  Legitimate, Nondiscriminatory Reason and Pretext

Assuming *arguendo* that Plaintiff has established a *prima facie* case of race discrimination, the Court will next consider whether Defendant has produced a legitimate, nondiscriminatory reason for the adverse-employment action, and, if so, whether Plaintiff has carried her burden of showing either that the proffered reason was a pretext for discrimination or that Plaintiff's protected status was another motivating factor for the decision.

Defendant contends that it has articulated legitimate, non-discriminatory reasons for Plaintiff's termination, such as lack of work and budgeting concerns. Plaintiff contends that the

---

[27] [Id.]
[28] [Doc. No. 19-4 p. 21].

"lack of work" argument is pretextual because the post office continued to advertise for help even after [Plaintiff's] dismissal."[29] The Court agrees with Defendant.

Once a legitimate, nondiscriminatory reason is offered, the burden of proof would shift to plaintiff to prove that the legitimate reasons offered by the defendant were not its true reasons but were just a pretext for discrimination. *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S.133, 143 (2000).  A plaintiff proves pretext either directly by showing a discriminatory reason more likely motivated the employer's decision or indirectly by showing the employer's explanation is not worthy of credence. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981). Employment discrimination laws were "not intended to be a vehicle for judicial second-guessing of employment decisions nor [are they] intended to transform the courts into personnel managers." *Moss v. BMC Software, Inc.,* 610 F.3d 917917, 926 (5th Cir. 2010).

Defendant has established a legitimate, nondiscriminatory reason for termination. Plaintiff understood the circumstances surrounding her temporary position. As set out in the "Memorandum of Understanding,"[30] Plaintiff was hired as back fill at the height of COVID-19 because permanent employees were staying home in accordance with the liberal leave policies. Once the initial circumstances of COVID-19 subsided, employees were returning to work, and as such, Plaintiff's help was no longer needed. Further, Williams stated in an affidavit that because of employees returning to work, the post office was over budget on allotted hours by two employees.

A plaintiff must produce substantial evidence showing that the proffered reason was pretext for discrimination. *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Plaintiff alleges that such position was replaced but offers no substantial evidence of a replacement and is instead basing her argument upon her conclusory allegations. For instance, Plaintiff argues in the opposition:

---

[29] [Doc. No. 19-3 p. 5].
[30] [Doc. No. 13-4 p. 11].

> Postmaster Williams has testified in her affidavit that Plaintiff was not replaced but if Plaintiff was not replaced, the work she was doing must have been shifted to co workers who are all African Americans.[31]

This argument fails because, even if true, a temporary employee is not similarly situated to a permanent employee.

The Court finds that Defendant has clearly articulated legitimate, non-discriminatory reasons for Plaintiff's termination of her temporary employment and that Plaintiff has failed to prove any pretext. Accordingly, the Motion for Summary Judgment on this issue is **GRANTED.**

## 2.  Retaliation

An employee establishes a *prima facie* case for unlawful retaliation by proving: (1) that she engaged in activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse employment action. *Rayborn v. Bossier Parish School Board.,* 881 F.3d 409, 415 (5th Cir. 2018).  If a plaintiff successfully establishes a *prima facie* case, the burden shifts to the defendant to produce a legitimate, nonretaliatory reason for the adverse employment action. *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 490 (5th Cir. 2014).  If defendant makes this showing, the burden shifts back to plaintiff to prove that defendant's proffered reason is actually pretext for retaliation. *Id*. An employee establishes pretext by proving that "but for" the protected activity, he would not have suffered the employment actions of which he complains. *See Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

### a.  Prima Facie Case of Retaliation

Plaintiff argues the primary proof of the causation element is the timing between Plaintiff's complaint of racial discrimination and her termination. Defendant argues that Plaintiff, because

---

[31] [Doc. No. 19-3 p. 2].

she was under a temporary employment assignment, cannot show that she would have been terminated because of Williams' alleged retaliatory animus. The Court agrees with Plaintiff that there is a genuine issue of material fact as to the causation element.

"[A]t the prima facie case [stage], a plaintiff can meet his burden of causation by showing close enough timing between his protected activity and his adverse employment action." *Brown v. Wal-Mart Stores East, L.P*., 969 F.3D 571, 578 (5th Cir. 2020) (citing *Garcia v. Professional Contract Services, Inc*., 938 F.3d 236, 243 (5th Cir. 2019)."   "Temporal proximity between protected activity and an adverse employment action, by itself, does not constitute sufficient evidence to satisfy the prima facie burden unless that proximity is 'very close.'" *Everett v. Central Mississippi, Inc. Head Start Program*, 444 Fed.Appx. 38, 46 (5th Cir. 2011) (citing *Clark County School Dist. V. Breeden,* 532 U.S. 268, 273 (2001). In *Garcia v. Professional Contract Services, Inc.*, the Fifth Circuit stated that up to four months could "cause there to be an inference of proximity of causation from proximity in time." 938 F.3d at 243.

Although slightly ambiguous in the record, it can be inferred that the adverse employment action and the protected activity of filing the EEOC complaint were within a few days of each other, if not the same day**.** Thus, the temporal proximity was "very close." *Everett*, 444 Fed. Appx. 38, 46 (5th Cir. 2011). Moreover, Plaintiff asserts that she "was separated from her employment as soon as [Waldroup] told the Postmaster of complaints of racial discrimination."[32] However, Waldroup stated that he was not aware that Plaintiff had filed a complaint of racial discrimination until he got the email from the EEOC. Nevertheless, he could not recall if he received an email from the EEOC about answering questions before or after Plaintiff's termination.

---

[32] [Doc. No. 19-2 p. 2 ¶ 12].

Therefore, a genuine issue of material fact exists as to the alleged retaliation claim such that the Motion for Summary Judgment on this issue is **DENIED**.

### 3.   Racially Hostile Work Environment

Defendant asserts that Plaintiff has no probative evidence to establish a hostile work environment claim.[33] Plaintiff states in the opposition that this is "primarily a retaliation case" and only sporadically mentions a claim of a racially hostile work environment. Nevertheless, the Court will address the claim of a hostile work environment because it is asserted in the complaint.

"To prevail on a Title VII claim based on a hostile work environment, an employee must prove: '(1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) such harassment was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action'." *Parker v. State of Louisiana Dept. of Educ. Special School Dist.*, 323 Fed.Appx. 321, 325 (5th Cir. 2009) (citing *Ramsey v. Henderson,* 286 F.3d 264, 268 (5th Cir. 2002).

In this case, Plaintiff cannot show that the harassment rose to the level of "severe or pervasive." The harassment must be "severe or pervasive" enough to create an abusive working environment in order for the plaintiff to recover. *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008). Furthermore, the test in determining a hostile work environment is the totality of the circumstances, which requires the following to be weighed: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with the employee's work performance. *Id.* Title VII does not impose a general civility code on employers. *West v. City of Houston, Texas*,

---

[33] [Doc. No. 13-1 p. 13].

960 F.3d 736, 737 (5th Cir. 2020) (quoting *Oncale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75, 80, 118 U.S. 998, 140 L.Ed.2d 201 (1998)).

In *Melvin v. Barr Roofing Company*, 806 Fed.Appx. 301, 308 (5th Cir. 2020), the Court concluded that Melvin had alleged something more than just poor or unkind management by providing evidence that he was consistently called derogatory racial slurs over the course of years. Here, the alleged slurs were not consistent and certainly not over the course of years.

Moreover, in *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir. 1996), the Court stated that because plaintiff was subject to offensive, sex-based comments two to three times per week, a jury could find severe and pervasive harassment.

Plaintiff alleges that she was subject to unwarranted racial slurs from co-employees, but she cannot prove the harassment as these assertions are unsubstantiated. In particular, Plaintiff alleges that Jackson made "derogatory comments about Plaintiff and threatened to slash her tires," but Plaintiff offers no evidence of such. Even if there was more evidence in the record, this is an isolated event that is not "extremely serious." *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

A specific incident that is an extensive part of Plaintiff's claim is that her co-employee, Howard, allegedly "threw a package at her head." However, she admitted that she never reported this incident as racial harassment. When asked about racial harassment, she stated in her deposition that she never mentioned race and instead only concluded there was a racial issue based on her own feelings. Specifically, she stated:

> It was there. I mean, that was the reason he was doing it. He wanted me -- I was surrounded by black people in this office that did not want a white person in here and – [.][34]

---

[34] [Doc. No. 19-6 p. 9].

13

These unsupported assertions do not rise to the level of evidence required to defeat a motion for summary judgment. Not only is evidence in the record lacking, but the Court does not believe such isolated incidents rise to the level of "severe or pervasive" considering the requirements of Plaintiff's job—throwing packages. Further, there is testimony from two caucasian employees who assert that they were never aware of any racial issues.

Therefore, because the alleged slurs were not consistent and certainly not over the course of years, a reasonable jury could not find that such alleged harassment was severe or pervasive enough to defeat the Motion. Defendant is entitled to judgment as a matter of law dismissing such claim. Thus, Defendant's Motion for Summary Judgment on this issue is **GRANTED.**

### 4.  Remaining Defendants

The Complaint lists both DeJoy and the United States Postal Service ("USPS") as Defendants, so it is not entirely clear whether the Plainitff intended USPS to be a separate defendant. However, the postmaster general is the only proper defendant in a Title VII action against the Postal Service. *Lamb v. United States Postal Service*, 852 F.2d 845, 846 (5th Cir. 1988). Therefore, because USPS would be a redundant and unnecessary defendant, the Court intends to *sua sponte* dismiss USPS, unless, within fourteen days of the date of this notice, Plaintiff files an opposition memorandum detailing why USPS should be a defendant.

## III.  CONCLUSION

For the foregoing reason, Defendant's Motion for Summary Judgment [Doc. No.13] is **GRANTED** regarding the racial discrimination and racially hostile work environment claim. It is **DENIED** regarding the retaliation claim. Plaintiff's claims of racial discrimination and hostile work environment are **DISMISSED WITH PREJUDICE.**

Monroe, Louisiana, this 14th day of November 2023.

**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**