UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**KIMBERLY D MALONE**      **CASE NO. 3:21-CV-03882**

**VERSUS**      **JUDGE TERRY A. DOUGHTY**

**LOUIS DEJOY**      **MAG. JUDGE KAYLA D. MCCLUSKY**

**MEMORANDUM ORDER**

Pending before the Court is a Motion for Summary Judgment [Doc. No. 42] filed by Defendant Louis DeJoy ("DeJoy" or "Defendant"), in his official capacity as the Postmaster General of the United States. Plaintiff Kimberly Malone ("Malone" or "Plaintiff") filed an Opposition [Doc. No. 44]. Defendant filed a Reply [Doc. No. 47].

For the reasons set forth herein, Defendant's Motion for Summary Judgment is **DENIED**.

**I. BACKGROUND**

Plaintiff, a Caucasian female, was employed by the United States Postal Service ("USPS") for a total of twenty-six years, which were mostly served in Mississippi.[1] The date and location subject to the present claim began around April 13, 2020, through July 27, 2020, in Monroe, Louisiana.[2] During Plaintiff's brief time

---

[1] [Doc. No. 3, p. 2].
[2] [Doc. No.13-4, pp. 1–2].

1

spent at the Monroe location, Sharon Williams ("Williams") served as Postmaster.[3] Despite being Postmaster, Williams was not responsible for hiring clerk assistants.[4]

During the time of the COVID-19 pandemic ("COVID-19"), the USPS office in Monroe had a special need for a temporary worker due to the increased absences of employees under the "liberal leave policies."[5] The temporary position was titled "Clerk Assistant (E6-07),"[6] and Plaintiff was the only temporary Clerk Assistant hired at the Monroe location.[7] The job description stated that the "position [was] to be used for temporary support employees for the purpose of COVID-19 work during the exception period only."[8] Specifically, it was agreed that the temporary appointment was to end on May 25, 2020.[9] Although the extension was not guaranteed, William Waldroup ("Waldroup")," who was also a Caucasian and supervisor to Plaintiff during her tenure at USPS, informed Plaintiff that her appointment was extended to September 25, 2020.[10]

Despite the temporary extension, Plaintiff's position was relieved on July 27, 2020, because the Monroe Post Office was "overbudget on allotted hours by two employees" and because employees were returning to work from the pandemic.[11] Although it is alleged that a "work needed" advertisement was placed on a public site

---

[3] [Id. at p. 4].
[4] [Id.]
[5] [Id.].
[6] [Id. at p. 3].
[7] [Id. at p. 4].
[8] [Id.]
[9] [Id. at p. 1].
[10] [Id. at p. 2]; [Doc. No. 19-6, p. 76].
[11] [Doc. No. 13-4, p. 5]

2

after Plaintiff's termination, no records show that any person was hired to replace Plaintiff's temporary position.[12]

During Plaintiff's brief tenure with the USPS, she was tasked with separating packages by throwing parcels into particular carts.[13] Plaintiff alleges that one morning when throwing packages, a co-employee named Vince Howard ("Howard") told a "vulgar story."[14] Plaintiff does not claim that the story involved race or anything of that nature.[15] Plaintiff did not report it to management.[16] On June 4, 2020, Plaintiff alleged Howard was throwing packages at her, but she did not report it to management because she felt that Williams did not have a friendly demeanor about her.[17] Plaintiff allegedly spoke to Royce Randall Reppond ("Reppond"), a store steward, about Howard throwing packages in passing, yet Reppond could not recall such conversation.[18] However, Reppond admitted that Howard did have anger management issues.[19] Plaintiff stated in her deposition that, despite the alleged conversation, she never told Reppond that Howard was throwing packages at her because of her race.[20] Thereafter, Plaintiff alleged that Howard stated "all white people needed to get out of that office and Plaintiff had white privilege."[21] Again, Plaintiff did not report this statement to management.[22] Plaintiff also alleges Ms.

---

[12] [Id.]; [Doc. No. 19-4, p. 21]
[13] [Doc. No. 19-5, p. 5].
[14] [Id. at p. 10].
[15] [Doc. No. 19-5, p. 10].
[16] [Id.]
[17] [Id. at pp. 21, 25].
[18] [Doc. No. 19-9, p. 8].
[19] [Id. at p. 11].
[20] [Doc. No. 19-5, p. 23].
[21] [Doc. No. 3, p. 3].
[22] [Doc. No. 19-5 p. 10].

3

Jackson ("Jackson"),[23] an African American female, made derogatory comments and threatened to slash Plaintiff's tires.[24] Plaintiff alerted her supervisor, Waldroup, of the racially motivated remarks made by coworkers made between April 20 to July 18, 2020.[25]

Although Plaintiff alleges Waldroup and she "had discussed race and problems here before,"[26] Plaintiff sent a text message to Waldroup on July 14th, 2020, stating she "had enough of Vince buzzing packages over [her] head," but did not disclose any racial issue therein.[27] On July 18th, 2020, Plaintiff texted Waldroup to complain about harassment from Jackson and about the Post Office being a "hostile work environment."[28] She remarks to Waldroup that she wished he wouldn't bring up "the race problems" because of Jackson's feelings towards her, saying she did not want to work with Jackson.[29] On July 19th, 2020, Plaintiff texted Waldroup to verify that she was removed from the work schedule according to "the [P]ostmaster[']s instructions to [him]."[30] Her text details she spoke on the phone with Waldroup earlier that day to discuss her refusal to work at the Post Office without a supervisor present and how she brought to "[Waldroup] & the [P]ostmaster[']s attention the numerous USPS

---

[23] It is ambiguous as to the proper spelling of the first name. In Plaintiff's Response to Defendants' Alleged Undisputed Facts [Doc. No. 19-2], the name is spelled "Shannon." In Plaintiff's Complaint [Doc. No. 3, p. 4], the name is spelled Chimere. In Plaintiff's deposition, the name was spelled Shemear [Doc. No. 19-5, p. 2].
[24] [Doc. No. 3, p. 4].
[25] [Doc. No. 38-1, p. 4].
[26] [Doc. No 19-6, pp. 16, 10]
[27] [Doc. No. 39-2, p. 23]; [Doc. No. 19-5, p. 23].
[28] [Doc. No. 39-2, pp. 24–26].
[29] [Id.].
[30] [Doc. No. 39-2, p. 28].

4

policy violations, the harassment [she's] receiving & the hostile work environment."[31] Waldroup responded to Plaintiff's messages less than two hours later on Sunday, July 19th at 8:31 PM to confirm she would not be on the schedule.[32]

On or around July 27, 2020, Plaintiff filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC").[33] Plaintiff brought a claim for racial discrimination under Title VII of the Civil Rights Act of 1964. Plaintiff alleged Defendant discriminated against her based on her race and that she was subject to a racially hostile work environment. After complaining of such, Plaintiff alleged that Defendant retaliated against her. Defendant filed a Motion for Summary Judgment[34] on July 6, 2023, arguing that Plaintiff does not have probative evidence in establishing a racial discrimination or hostile work environment claim and cannot show that she was discharged in retaliation for making a complaint of discrimination. The Court granted Defendant's Motion for Summary Judgment regarding the racial discrimination and racially hostile work environment claims, but denied the retaliation claim.[35] Defendant filed this instant motion on June 5, 2025, arguing that Plaintiff cannot show that termination of her temporary position with USPS was motivated by retaliation for her filing of an EEO complaint because no relevant individual knew of Plaintiff's protected activity prior to her termination.[36]

The issue has been briefed, and the Court is prepared to rule.

---

[31] [Doc. No. 39-2, p. 28].
[32] [Id. at p. 29].
[33] [Doc. No. 3, p. 5].
[34] [Doc. No. 13]
[35] [Id.].
[36] [Doc. No. 42-1 p. 7].

5

## II. LAW AND ANALYSIS

### A. Standard of Review

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.* "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

6

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson,* 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

    **B. Analysis**

        **1. Retaliation**

Title VII "prohibits an employer from discriminating against an employee … because that individual made a charge, testified, assisted, or participated in a Title VII proceeding or investigation." *Ladner v. Walmart*, 834 F. App'x. 893, 895–96 (5th Cir. 2020). The two categories of protected activity under Title VII are: "1) opposition to any practice rendered unlawful by Title VII ("opposition clause"), and 2) making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII ("participation clause")." *Rodrigue v. PTS Mgmt. Grp., LLC*, 550 F. Supp. 3d 376, 400 (W.D. La. 2021). Where the retaliation claim is "based on circumstantial evidence, we apply the *McDonnell Douglas* framework." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *McDonnell Douglas* provides a three-step framework for analyzing retaliation claims. First, the Plaintiff must establish a *prima facie* case of unlawful retaliation. *Brown*, 969 F.3d at 577. Second, if the Plaintiff successfully establishes a *prima facie* case, the burden shifts to the Defendant to produce a legitimate, nonretaliatory reason for the adverse employment action. *Id.* Finally, if the Defendant makes this showing, the burden shifts back to the Plaintiff to prove that the proffered reason was pretext for unlawful retaliation. *Id.* To survive a motion for summary judgment, the Plaintiff must demonstrate "a conflict in substantial evidence on the question of whether the employer would not have taken the adverse employment action but for the protected activity." *Id.* (internal quotations omitted); *see Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

### a. *Prima Facie* Case of Retaliation.

An employee establishes a *prima facie* case for unlawful retaliation by proving: (1) that she engaged in activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse employment action. *Rayborn v. Bossier Parish School Board.*, 881 F.3d 409, 415 (5th Cir. 2018).

### i. Plaintiff Engaged in Protected Activity.

Plaintiff argues her retaliation claim is not limited to the EEO filing and should include her internal complaints made to her supervisor, Waldroup, prior to her termination.[37] Defendant asserts Plaintiff's Title VII claim is limited to retaliation for the protected activity of filing her EEO complaint.[38] The Court agrees with the Plaintiff that she engaged in protected activity when she complained to her supervisor on July 18, 2020, and when she filed her EEO complaint on July 27, 2020.

#### 1. Internal Complaints to Waldroup

When an employee makes a vague complaint, without referring to an unlawful employment practice under Title VII, the complaint does not constitute protected activity. *Harris-Childs v. Medco Health Solutions, Inc.*, 169 F. App'x. 913, 916 (5th Cir. 2006). The Fifth Circuit held in *Harris-Childs* that the plaintiff had not engaged in protected activity when she complained to management about unfair treatment and harassment because she did not specifically mention race or sex in her

---

[37] [Doc. No. 44, p. 1].
[38] [Doc. No. 47, p. 1].

9

complaints. *Id.* As plaintiff did not specifically complain of racial or sexual harassment, she failed to "put her employer on notice that her complaint was based on racial or sexual discrimination." *Id.* Moreover, general allegations of hostility are not enough, an employee must at least refer to conduct that could be plausibly considered discriminatory in intent or effect to be sufficiently able to alert the employer of its discriminatory practices. *Saketkoo v. Administrators of the Tulane Education Fund*, 31 F.4th 990, 1000 (5th Cir. 2022).

In the present case, Defendant alleges Waldroup was not aware of racial issues within the post office[39], but Waldroup's EEO Investigative Affidavit answers show Malone told him of "some racial remarks that were made" by coworkers at the post office between April 20, 2020 to July 18, 2020.[40] Specifically, Plaintiff notified Waldroup of derogatory comments made by Jackson to Plaintiff on July 14, 2020.[41] When questioned by Waldroup, Jackson stated Plaintiff was lying.[42] Waldroup informed Williams about Plaintiff's complaints about racial comments made to her.[43] While the Affidavit inquires about what policies or practices management followed regarding the handling of Plaintiff's complaint, Waldroup answers that "the Postmaster spoke with the employees allegedly involved,"[44] but Postmaster Williams

---

[39] [Doc. No. 13-4, p. 10].
[40] [Doc. No. 38-1, p. 4].
[41] [Id. at p. 5].
[42] [Id.].
[43] [Id.].
[44] [Id. at p. 6].

10

stated in her affidavit that she did not conduct an investigation into [Malone's] allegations of harassment/hostile work environment.[45]

On July 18th, 2020, Plaintiff sent a text to Waldroup complaining how Jackson's harassment of her had created a "hostile work environment" at the post office.[46] She goes on to say while she asked Waldroup to not address the "race problems" with Jackson, Plaintiff was later subjected to harassment by Jackson, with the coworker warning others to not discuss "anything about race" because Plaintiff was a "snitch."[47] While Waldroup testifies he did not ask Plaintiff what she meant by "racial problems" in her text message from July 18th, 2020,[48] Plaintiff maintains Waldroup "knew there were racial issues" and she would tell Waldroup she was being discriminated against because she was white.[49] Waldroup recalls talking to Williams after receiving the text messages on July 18th, 2020, and was told by Williams to "put [Malone] off the schedule" after Plaintiff complained.[50]

On July 19th, 2020, Plaintiff texted Waldroup at 6:49 PM to verify that she was removed from the schedule according to "the [P]ostmaster[']s instructions to [him]."[51] She detailed in the text message that she spoke on the phone with Waldroup earlier that day to discuss her refusal to work at the Post Office without a supervisor present and how she has brought to "[Waldroup] & the [P]ostmaster[']s attention the

---

[45] [Doc. No. 45-2, p. 5].
[46] [Doc. No. 19-8, p. 28].
[47] [Id. at pp. 28–30.].
[48] [Doc. No. 19-8, pp. 11–12].
[49] [Doc. No. 19-6, pp. 10–11].
[50] [Doc. No. 19-8, p. 13].
[51] [Doc. No. 39-2, p. 28].

11

numerous USPS policy violations, the harassment [she's] receiving & the hostile work environment."[52] Waldroup responded to Malone's messages less than two hours later on Sunday, July 19th at 8:31 PM to confirm she would not be on the schedule and that there would not be a supervisor at 2:00 AM when she was scheduled.[53]

Plaintiff's text message complaint on July 18th, 2020, to Waldroup, her supervisor, about the hostile environment and race problems she was experiencing at work demonstrates that she sufficiently placed her employer on notice of racial discrimination within the post office. Therefore, the internal complaint to Waldroup is a protected activity under the opposition clause of Title VII and is considered when evaluating the Plaintiff's retaliation claim. *See Rodrigue*, 550 F. Supp at 400.

### 2. Plaintiff's EEOC Complaint

Plaintiff's filling of an EEO complaint on July 27th, 2020, is protected activity under the participation clause of Title VII. Defendant does not contest that Plaintiff's filing of EEO complaint was a protected activity under the participation clause of Title VII. *See id.*

### ii. Plaintiff Suffered an Adverse Employment Action.

Turning to the second prong needed to establish a *prima facie* case of retaliation, the plaintiff has the burden to show she suffered an adverse employment action. *Brown*, 969 F.3d at 577. Following Plaintiff's text messages to Waldroup sent on July 18th, 2020, complaining about the "hostile work environment" within the post office, Waldroup relayed the messages to Williams who told Waldroup to "put

---

[52] [Id.].
[53] [Doc. No. 39-2, p. 29].

12

[Malone] off the schedule."[54] Plaintiff filed a formal EEOC complaint on July 27th, 2020.[55] Plaintiff's employment was terminated by Williams the very same day.[56] Therefore, the second prong is established because the Plaintiff engaged in protected activity under Title VII and her employment at the post office was terminated nine days later.

### iii. Causal Link Existed Between the Protected Activity and the Adverse Employment Action.

Defendant argues that Plaintiff cannot show a causal link between her protected activity and her termination because there was no knowledge of Plaintiff's protected activity prior to her termination.[57] Plaintiff argues the causation element is met because of the temporal proximity between Plaintiff's complaint of racial discrimination to Waldroup and her termination.[58] The Court agrees with the Plaintiff that there is a genuine issue of material fact as to the causation element.

"[A]t the prima facie case [stage], a plaintiff can meet his burden of causation by showing close enough timing between his protected activity and his adverse employment action." *Brown*, 969 F.3d at 577 (citing *Garcia v. Professional Contract Services, Inc.*, 938 F.3d 236, 243 (5th Cir. 2019))." "Temporal proximity between protected activity and an adverse employment action, by itself, does not constitute sufficient evidence to satisfy the prima facie burden unless that proximity is 'very close.'" *Everett v. Central Mississippi, Inc. Head Start Program*, 444 F. App'x. 38, 46

---

[54] [Doc. No. 19-8, p. 13].
[55] [Doc. No. 3, p. 5 at ¶ k].
[56] [Doc. No. 13-3, p. 3 at ¶ 13].
[57] [Doc. No. 42-1 p. 7].
[58] [Doc. No. 44 p. 3].

(5th Cir. 2011) (citing *Clark County School Dist. V. Breeden,* 532 U.S. 268, 273 (2001)). In *Garcia v. Professional Contract Services, Inc.*, the Fifth Circuit stated that up to four months could "cause there to be an inference of proximity of causation from proximity in time." 938 F.3d at 243. However, even very-close temporal proximity does not establish causation as a rule. *Ladner* 834 F. App'x at 897. The Fifth Circuit maintains that even at the *prima facie* stage, temporal proximity can only establish a causal link when it is connected to the decision maker's knowledge of the protected activity. *Dearman v. Stone County School District*, 832 F.3d 577, 582 (internal quotations omitted.).

In the case at hand, Plaintiff informed Waldroup of racial discrimination on July 18th and her adverse employment action occurred on July 27th, the same day of Plaintiff's filing of the EEOC complaint.[59] Thus, the temporal proximity was "very close." *Everett*, 444 Fed. App'x. at 46. Moreover, Plaintiff asserts that she "was separated from her employment as soon as [Waldroup] told the Postmaster of complaints of racial discrimination."[60] In the EEO Investigative Affidavit, Waldroup testifies he informed the Postmaster of Plaintiff's complaints about Jackson's derogatory comments.[61] While Waldroup reported on the EEO Investigative Affidavit that "the Postmaster spoke with the employees allegedly involved,"[62] Postmaster Williams stated in her affidavit that she did not conduct an investigation into

---

[59] [Doc. No. 19-8, pp. 28–30]; [Doc. No. 13-3, p. 3 at ¶ 13].
[60] [Doc. No. 19-2, p. 2 at ¶ 12].
[61] [Doc. No. 38-1, p. 5].
[62] [Doc. No. 38-1, p. 6].

14

[Malone's] allegations of harassment/hostile work environment.[63] Moreover, Malone complained to Waldroup via text message on July 18th, 2020, discussing the hostile environment within the post office.[64] The very next day, Plaintiff texts Waldroup at 6:49 PM to verify that she was removed from the schedule according to "the [P]ostmaster[']s instructions to [him]."[65] Plaintiff detailed in her message that she spoke on the phone with Waldroup earlier that day to discuss her refusal to work at the Post Office without a supervisor present and how she has brought to "[Waldroup] & the [P]ostmaster[']s attention the numerous USPS policy violations, the harassment [she's] receiving & the hostile work environment."[66] Waldroup responded to Malone's messages less than two hours later on Sunday, July 19th at 8:31 PM to confirm she would not be on the schedule and that there would not be a supervisor at 2:00 AM when her she was scheduled.[67] While Waldroup testified that he spoke with Postmaster Williams about Plaintiff's complaints, Williams testified in her affidavit that Malone never reported harassment, and "she could not recall [Malone] telling her that her or anyone else's' actions constituted a harassment/hostile work environment for [Malone]."[68]

Therefore, a genuine issue of material fact exists as to Waldroup's and Williams' knowledge of Plaintiff's protected activity prior to her termination. As such, the Motion for Summary Judgment for Plaintiff's retaliation claim is **DENIED**.

---

[63] [Doc. No. 45-2, p. 5].
[64] [Doc. No. 19-8, p. 28-30].
[65] [Doc. No. 39-2, p. 28]; Waldroup confirms in his deposition that Postmaster Williams told him to "put [Malone] off the schedule" after Malone complained on July 18th, 2020. [Doc. No. 19-8 p. 13].
[66] [Doc. No. 39-2 p. 28].
[67] Id. at p. 29.
[68] [Doc. No. 45-2, p. 5].

15

### b. USPS' legitimate, non-discriminatory reason for the adverse employment action

Assuming, arguendo, Plaintiff proved the burden of *prima facie* case of retaliation, the employer must then articulate a legitimate, non-discriminatory reason for its actions. *Brown* 969 F.3d at 577. While the defendant's reason for termination must be clear and reasonably specific, the burden on the defendant is one of production, not persuasion. *Shahrashoob v. Tex. A&M Univ.*, 125 F.4th 643, 653 (5th Cir. 2025). In *Shahrashoob v. Texas A&M University*, the University reasoned that they fired Shahrashoob because of budgetary constraints and teaching needs and the Fifth Circuit held these were legitimate and nonretaliatory reasons for terminating Shahrashoob's not renewing her contract. *Id.*

Here, Defendant states their reason for terminating Plaintiff's employment was due to "lack of work," which is seen on the USPS' Notification of Personnel Action.[69] Defendant's first Motion for Summary Judgment goes on to say Postmaster Williams had to terminate Malone because the post office was "over budget on allotted hours and the only way to reduce those hours was to reduce temporary personnel."[70] The Fifth Circuit has held the elimination of an employee's position as a result of a reorganization or reduction-in-force is a legitimate, nonretaliatory reason for termination. *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019). As Defendant fired Plaintiff because the post office was "over budget on allotted hours"

---

[69] [Doc. No. 13-4 p. 2].
[70] [Doc. No. 13-1 p. 9].

and it was "the only way to reduce those hours," Defendant's reason for termination is legitimate and non-discriminatory.[71]

### c. Defendant's proffered reason was pretext for unlawful retaliation

As the Defendant produced a legitimate, non-discriminatory reason for the termination of Plaintiff, the burden shifts back to the Plaintiff for the third step in the *McDonnell Douglass* test—to prove that the proffered reason given by the Defendant was pretext for unlawful retaliation. *Brown* 969 F.3d at 577.

Pretext can be proven by any evidence that casts doubt on the credence of the employer's proffered justification for the adverse employment action. *Id.* at 578. To satisfy the final step of the *McDonnell Douglass* test and survive a motion for summary judgment, the plaintiff must demonstrate "a conflict in substantial evidence" on the question of whether the employer would not have taken the adverse employment action "but for" the protected activity. *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019) (quoting *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 658 (5th Cir. 2012)). While temporal proximity alone is enough to meet the burden of causation to establish a *prima facie* case of retaliation, temporal proximity is "relevant to, but not alone sufficient" to show a defendant's neutral explanation was pretext. *Brown* 969 F.3d at 579. *See also Shahrashoob*, 125 F.4th at 653–54 (recognizing that a plaintiff can show pretext through temporal proximity plus significant record evidence.).

---

[71] [Id.].

17

Therefore, the Court must consider whether Malone's other evidence, in combination with this temporal proximity, is sufficient for a reasonable jury to find but-for causation. Factors to consider include: the strength of plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered. *Brown* 969 F.3d at 578. While the temporal proximity between Plaintiff's complaints and her formal dismissal of employment from Williams is "very close," there are discrepancies in the decisionmaker's knowledge of Plaintiff's protected activity. While Waldroup's EEO Investigative Affidavit answers show Malone told him of "some racial remarks that were made" by coworkers at the post office between April 20, 2020 to July 18, 2020.[72] While the Affidavit inquires about what procedures management followed regarding Plaintiff's complaint, Waldroup answers that "the Postmaster spoke with the employees allegedly involved."[73] However, Postmaster Williams stated in her affidavit that she did not conduct an investigation into [Malone's] allegations of harassment/hostile work environment and that Malone never reported harassment in the post office.[74] While Defendant cites the non-discriminatory reason for terminating Plaintiff's employment was lack of work, Plaintiff saw job openings posted for the Monroe Post Office.[75] In contrast to Defendant's assertion that there was a lack of work at the time of Plaintiff's termination, Waldroup told Plaintiff in July 2020 that her contract was extended to

---

[72] [Doc. No. 38-1, p. 4].
[73] [Id. at p. 6].
[74] [Doc. No. 45-2, p. 5].
[75] [Doc. No. 39-2, p. 20].

18

September 25, 2020.[76] Additionally, Plaintiff submits a copy of the USPS' NonCareer Separation/Termination Rehire Break In Service Request that states the Plaintiff's name, termination date, reason for termination, and instructs the Human Resources Shared Service Center to "please do not rehire [Malone] for Monroe."[77] The phone number of the submitter matches the contact number of Postmaster Williams given to Malone in the emailed instructions on how to enter the Monroe Post Office prior to her first day.[78] As Plaintiff has provided evidence to cast doubt on the Defendant's non-discriminatory reason for terminating Plaintiff and the credibility of Postmaster recollection of not recalling any of Plaintiff's complaints about racial discrimination, there "a conflict in substantial evidence" on the question of whether Williams had knowledge of Malone's complaints of racial harassment and whether Williams would have terminated Malone if she had not complained.

### III. CONCLUSION

For the foregoing reason, Defendant's Motion for Summary Judgment [Doc. No.42] is **DENIED** regarding the retaliation claim.

MONROE, LOUISIANA, this 29th day of September 2025.

_____
Terry A. Doughty
United States District Judge

---

[76] [Id. at p. 4].
[77] [Id.].
[78] [Doc. No. 39-2, pp. 5, 18].

19